United States District Court

For the Northern District of California

1

2

3

4    IN THE UNITED STATES DISTRICT COURT

5    FOR THE NORTHERN DISTRICT OF CALIFORNIA

6    ANDREW HARVEY,                          )   No. C 07-00204 SBA (pr)
                                             )
7              Petitioner,                   )   **ORDER DENYING PETITION**
      v.                                     )   **FOR WRIT OF HABEAS**
8                                            )   **CORPUS**
      BEN CURRY, Warden,                     )
9                                            )
               Respondent.                   )
10   _____)

11                        **INTRODUCTION**

12            Petitioner Andrew Harvey, a California state prisoner, filed this pro se petition for a writ of

13   habeas corpus pursuant to 28 U.S.C. § 2254 in which he challenges a 2004 decision by the Board of

14   Prison Terms ("Board") that he is unsuitable for parole.  The Court directed respondent to show cause

15   why the cognizable claims should not be granted.  Respondent has filed an answer addressing the

16   merits of the petition, and Petitioner has filed a traverse.[1]  Having reviewed the parties' respective

17   submissions and the underlying record, the Court concludes Petitioner is not entitled to relief based

18   on the claim presented and will deny the petition.

19

20                        **BACKGROUND**

21            In 1980, Petitioner was convicted by a Superior Court of Los Angeles jury of two counts of

22   second degree murder (Cal. Pen. Code § 187), one count of robbery (id. § 211), and one count of

23   assault (id. § 245).  The jury also found true sentencing enhancement allegations that Petitioner used

24   a firearm in the commission of a felony (id. §§ 12022.5 & 12022(a)).  (Ans. Ex. 1 (Judgments).  The

25   trial court  sentenced Petitioner to a term of fifteen years to life, plus four years.  (Id.)  The state

26   _____

27            [1] Petitioner also has submitted a notice of supplemental authorities (Docket No. 9), in which
     he cites a recent Ninth Circuit case, Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008).  Because
28   Hayward is currently being reviewed en banc, it "shall not be cited as precedent by or to any court of
     the Ninth Circuit."  Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008).  Therefore, the Court will
     not address Petitioner's contentions to the extent that they are based on Hayward.

United States District Court

For the Northern District of California

1   appellate court reversed one of the murder convictions.  (Ans. Ex. 2 (Parole Hearing Transcript) at 1,

2   53.)  In June 2004, the Board found Petitioner unsuitable for parole, on the ground he "would pose

3   an unreasonable risk of danger to society or a threat to public safety if released."  (Id. at  52.)

4          The facts of the commitment offense are as follows.  In 1979, Petitioner was the principal

5   participant in the beating and robbery of Igor Budzinski,[2] whose motorcycle Petitioner stole on that

6   day.  Petitioner later tried to sell the stolen motorcycle for $500 back to Budzinski, who alerted the

7   police to this.  Budzinski and three undercover police officers, Willis, Lane, and Butler, arranged a

8   meeting at a bar with Petitioner regarding the sale.  Petitioner and a friend, Rocky Burch, met

9   Budzinski at a bar, as arranged, while the police waited outside.  After being directed to a truck

10  outside the bar by Budzinski, Petitioner and Burch then left the bar while armed.  During a

11  confrontation between the undercover officers, Budzinski, Petitioner, and Burch, Officer Willis shot

12  Petitioner and Burch, who shot Officer Lane, killing him.[3]  Officer Butler then shot and killed Burch.

13  Petitioner shot at Budzinski, but the gun misfired, and also at Butler, but missed.  Petitioner does not

14  dispute these facts.  (Id., Ex. 3 (Life Prisoner Evaluation Report) at 1-2.)

15         At the parole hearing, the Board reviewed Petitioner's record, including the circumstances of

16  his commitment offense -- which the Board found "demonstrated an exceptionally callous disregard

17  for human suffering" -- his unstable social history, his escalating pattern of criminal behavior, and

18  the opposition of the Los Angeles District Attorney to parole.  (Ans., Ex. 2 at 52-59.)  The Board

19  also considered Petitioner's most recent psychological report, but found it "vague . . . sketchy and

20  incomplete."  (Id. at 55.)  The Board noted, however, that Petitioner had "submitted substantial

21  parole plans for viable residential plans and acceptable employment plans," and Petitioner "has for

22  the most part been cooperative and has been having a positive stay here in state prison."  (Id. at 54,

23  55, 56.)  The Board reviewed a correctional officer's 2003 report on Petitioner in which it states that

24  Petitioner "would pose a moderate degree of threat if released to the public at this time."  (Id. at 30.)

25

26

27      [2] He is erroneously called "Bazinski" in the parole hearing transcript.

28      [3] As stated above, Petitioner's conviction for the killing of Officer Lane was reversed.

2

United States District Court

For the Northern District of California

1    The Board also noted that the Los Angeles District Attorney opposed the granting of parole. (Id. at

2    56) After a full hearing, during which all of the above evidence was considered, the Board found

3    Petitioner unsuitable for parole. (Id. at 52.)

4         In response to the Board's decision, Petitioner filed state habeas petitions, later denied, in the

5    superior, appellate, and supreme courts. (Pet. at 4-5.) The Los Angeles Superior Court gave the last

6    reasoned state opinion. It denied the petition, finding that the Board's decision was supported by

7    some evidence, and that the Board relied on many factors, including the circumstances of the

8    commitment offense, to arrive at its decision. (Ans., Ex. 8 at 1-3.) In 2007, Petitioner filed the

9    instant federal petition, alleging that the Board violated (1) his right to due process because its denial

10   of parole was not based on any evidence; and (2) his constitutionally protected liberty interest by

11   denying him parole based on the unchanging fact of his commitment offense. (Pet., P. & A. at 1.)

## DISCUSSION

### I.    Legal Standard

12

13

14        Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant

15   a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on

16   the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision

17   that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

18   determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on

19   an unreasonable determination of the facts in light of the evidence presented in the State court

20   proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim

21   "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction

22   relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim

23   on the basis of a procedural or other rule precluding state court review on the merits. Lambert v.

24   Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim

25   that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

26        The Ninth Circuit has applied section 2254(d) to a habeas petition from a state prisoner

27   challenging the denial of parole. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th

28

3

Cir. 2006); <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 901 (9th Cir. 2002) (assuming without deciding that AEDPA deferential standard of review under § 2254 applies to such decisions).

**A.      Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." <u>Williams v. Taylor</u>, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, <u>see id.</u> at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, <u>see Van Tran v. Lindsey</u>, 212 F.3d 1143, 1149-50 (9th Cir. 2000), <u>overruled on other grounds</u>, <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-73 (2003).

**1.      Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Id.</u>  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  <u>See, e.g.</u>, <u>Stevenson v. Lewis</u>, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. <u>Williams</u>, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to

**United States District Court**
For the Northern District of California

1   follow in determining whether a particular event violates a constitutional right; in such an area, it may

2   be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-

3   65.  When only the general principle is clearly established, it is the only law amenable to the

4   "contrary to" or "unreasonable application of" framework.  See id. at 73.

5       Circuit decisions may still be relevant as persuasive authority to determine whether a

6   particular state court holding is an "unreasonable application" of Supreme Court precedent or to

7   assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert.

8   denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

9           **2.    "Contrary to"**

10      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

11  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

12  state court decides a case differently than [the Supreme] Court has on a set of materially

13  indistinguishable facts."  Williams, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that

14  correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's

15  case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Williams, 529 U.S. at

16  406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  See

17  Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

18          **3.    "Unreasonable Application"**

19      "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

20  state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

21  unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-13.

22      "[A] federal habeas court may not issue the writ simply because that court concludes in its

23  independent judgment that the relevant state-court decision applied clearly established federal law

24  erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord

25  Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of

26  governing federal law must be not only erroneous, but objectively unreasonable); Woodford v.

27  Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to

28

5

"incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard.  Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point).  After Andrade,

> [T]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.     Section 2254(d)(2)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**II.     Petitioner's Claims**

Petitioner's two claims -- that the Board's decision was not supported by any reliable, or "some," evidence, and that the Board impermissibly relied solely on the unchanging factor of the

6

1    circumstances of the commitment offense, thereby violating his due process rights -- can be

2    addressed together.  (Pet., P. & A. at 1.)

3          The Board's denial of parole complies with due process provided that there is "some

4    evidence" to support its decision.  As the Supreme Court has explained, a parole board's decision

5    deprives a prisoner of due process if the Board's decision is not supported by "some evidence in the

6    record," or is "otherwise arbitrary."  See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129

7    (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in

8    Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see also McQuillion v. Duncan, 306 F.3d 895,

9    904 (9th Cir. 2002) (same).  Additionally, the evidence underlying the Board's decision must have

10   "some indicia of reliability."  See McQuillion, 306 F.3d at 904.  Accordingly, if the Board's

11   determination with respect to parole suitability is to satisfy due process, such determination must be

12   supported by some evidence having some indicia of reliability.  Rosas v. Nielsen, 428 F.3d 1229,

13   1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

14         In assessing whether there is "some evidence" to support the Board's denial of parole, this

15   Court must consider the regulations that guide the Board in making its parole suitability

16   determinations.  Pursuant to such regulations, "[t]he panel shall first determine whether the life

17   prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner

18   shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

19   an unreasonable risk of danger to society if released from prison."  15 Cal. Code Regs. § 2402(a).

20   Additionally, the regulations enumerate various circumstances tending to indicate whether or not an

21   inmate is suitable for parole.  Id., § 2402(c)-(d).  One circumstance tending to show an inmate's

22   unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner."

23   Id., § 2402(c).  Two factors that the parole authority may consider in determining whether such a

24   circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an

25   exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is

26   inexplicable or very trivial in relation to the offense."  Id., § 2402(c)(1)(D) & (E).  In addition to

27   these factors, the Board is to consider "all relevant, reliable information available," when deciding

28

United States District Court
For the Northern District of California

7

whether to grant parole.  Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled.  See In re Lawrence, 44 Cal. 4th 1181 (2008).  Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination.  Id. at 1205–06.

The Court notes that a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns. See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003).  "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes."  Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

Here, the Court cannot say the state court was unreasonable in concluding there is some evidence to support the Board's decision that Petitioner would be a danger to society if released. Contrary to Petitioner's assertion that the Board relied solely on the circumstances of the commitment offense, the Board identified several reasons based on evidence in the record for its decision, including the circumstances of the commitment offense, Petitioner's social and criminal history, and the district attorney's opposition to parole.

As to the circumstances of the commitment offense, some evidence exists to support the Board's finding that the commitment offense "was carried out in an especially cruel manner" as evidenced by the fact that "[m]ultiple victims were attacked, injured and/or killed in the same incident."  (Ans., Ex. 2 at 52.)  The Board's finding that "[t]he offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering" and that the motive for the crime was "inexplicable or very trivial in relation to the offense" are supported by evidence that Petitioner and Burch were engaged in blackmailing Budzinski after Petitioner had stolen his motorcycle, criminal acts that resulted in the deaths of two men, and Petitioner's conviction for one of

8

**United States District Court**
For the Northern District of California

1   those deaths. (Id. at 52-53.) Based on this record of violence born out of blackmail, the Court finds

2   some evidence exists to support the Board's finding that the circumstances of the commitment offense

3   indicate Petitioner remained unsuitable for parole in 2004.

4       In addition to the circumstances of the commitment offense, the Board's decision is supported

5   by Petitioner's unstable social history, his pattern of criminal conduct, and the opposition of the

6   district attorney to parole. There is some evidence that Petitioner had "unstable or tumultuous

7   relationships with others" and "serious psychiatric problems" as his suicide threats, and his time in

8   juvenile correction indicate. (Ans., Ex. 2 at 21-22, 54-55.) The Board also noted that Petitioner had

9   a record of "violence and assaultive behavior" and an "escalating pattern of criminal conduct" which

10   included a juvenile criminal history of burglary, and an adult criminal history that included more

11   burglaries, as well as robberies, assaults, attempted murder, mayhem, and drug possession offenses.

12   (Id. at 54.) Notices in the record from the Los Angeles District Attorney support the Board's finding

13   that law enforcement opposed Petitioner's release on parole. (Id. at 55.) From this record, it appears

14   that the Board, contrary to Petitioner's assertions, made a comprehensive, rather than a pro forma,

15   decision based on an individualized assessment of the particular facts of Petitioner's case, including

16   the circumstances and other relevant considerations.

17                         **CONCLUSION**

18

19       Because the record contains, at a minimum, some evidence to support the Board's finding that

20   Petitioner would present an unreasonable risk of danger to society if released, and because Petitioner

21   has made an insufficient showing as to his entitlement to relief on his other claims, the Court finds

22   the state court's determination was neither contrary to nor an unreasonable application of clearly

23   established Supreme Court precedent, nor can the Court say it was based on an unreasonable

24   determination of the facts. Accordingly, the petition for a writ of habeas corpus is DENIED as to all

25   claims. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the

26   file.

       **IT IS SO ORDERED**.

27   DATED: 5/11/09

28                             *Saundra B Armstrong*
                           SAUNDRA BROWN ARMSTRONG
                           United States District Judge

1

2

3   UNITED STATES DISTRICT COURT

4   FOR THE

5   NORTHERN DISTRICT OF CALIFORNIA

6

7

8   GREGORY L. PAYNE,                     Case Number: CV06-05310 SBA

9            Plaintiff,                   **CERTIFICATE OF SERVICE**

10     v.

11  B. CURRY et al,

12          Defendant.

13  _____/

14  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.
15

16  That on May 14, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said
    copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
17  envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located
    in the Clerk's office.

18

19

20
    Gregory L. Payne D72559
21  PO Box 689
    Soledad,  CA 93960
22

23  Dated: May 14, 2009

                                          Richard W. Wieking, Clerk
24                                        By: LISA R CLARK, Deputy Clerk

25

26

27

28

P:\PRO-SE\SBA\HC.07\Harvey204.hc.md.frm            10